# KURZMAN EIS

One North Broadway, 12ᵀᴴ Floor
White Plains, New York 10601
Tel: (914) 285-9800
Fax: (914) 285-9855

Correspondence Should Be
Sent to the White Plains
Address Only

Via CM/ECF

Honorable Philip M. Halpern, U.S.D.J.
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

> The parties' respective applications for pre-motion conferences are denied without prejudice for failure to comply with the Court's Individual Practices. The Court will not accept the proposed Rule 56.1 Statement annexed to the parties' letter-motions (Docs. 132-1; 133-1).
>
> The parties may file their revised Rule 56.1 Statement in compliance with the applicable rules by September 27, 2022, along with their respective pre-motion letters, should they be so inclined.
>
> The Clerk of Court is respectfully directed to terminate the pending letter-motions (Docs. 132; 133).
>
> SO ORDERED.
>
> _/s/ Philip M. Halpern_
> Philip M. Halpern
> United States District Judge
>
> Dated: White Plains, New York
> September 13, 2022

Re: Campbell v. Plant Health Intermediate, Inc.
7:19-cv-03017(PMH)

Campbell v. Douglas Products and Packaging Company LLC
7:21-cv-07920(PMH)

Dear Judge Halpern:

As Your Honor knows, we represent Plaintiff Nicole Campbell, as Seller Representative ("Seller Representative") in the above-referenced actions. Pursuant to Rules 2(C) and 4(E) of Your Honor's Individual Practices in Civil Cases, Nicole requests a pre-motion conference to present the basis for a motion for summary judgment on Count One in the Amended Complaint in each of the above-referenced actions seeking damages for breach of the Purchase Agreement by Defendants Plant Health Intermediate, Inc. ("PHI") and Douglas Products and Packaging Company LLC ("Douglas," and together with PHI, "Defendants") concerning Defendants failure to pay the First Earn-out Payment due under the Purchase Agreement. *See* ECF No. 34 in 7:19-

cv-03017; ECF No. 32 in 7:21-cv-07920. A copy of the parties' Joint Rule 56.1 Statement is enclosed herewith.[1]

Pursuant to the Purchase Agreement, PHI, an affiliate of Douglas, purchased all the capital stock of Growth Products and the membership interests in GPS. *See* Joint Rule 56.1 Statement at Joint Statement of Undisputed Material Facts (hereinafter, "JSUMF ¶ _") ¶¶ 1-2. As a result of closing on the Purchase Agreement, PHI became the owner of the Equity in Growth Products and GPS. *See id.* ¶ 3. The Purchase Agreement was executed by Long as the President of PHI and the Chief Executive Officer of Douglas. *See id.* at Additional Facts – Seller Representative (hereinafter "SR ¶ _") ¶ 3.

In the Purchase Agreement, PHI agreed to make two post-closing Earn-out Payments, which were to be calculated in accordance with a formula tied to the profitability of Growth Products and GPS in 2018, 2019, and 2020. *See id.* at JSUMF ¶¶ 4-10, 18-21; *id.* at SR ¶ 2. The Purchase Agreement contained specific provisions and time frames concerning the calculation of the Earn-out Payments. *See id.* at JSUMF ¶¶ 4-10, 12, 18-21; *id.* at SR ¶ 8. With respect to the First Earn-out Calculation Statement, PHI was required to provide the same to Nicole on or before sixty days from December 31, 2018, and Nicole was entitled to object to any calculation provided within forty-five days. *See id.* at JSUMF ¶ 10; *id.* at SR ¶ 8. If no objection was made, the calculation became final and binding on the parties and PHI was required to make payment within five business days. *See id.* at JSUMF ¶¶ 12-13. Douglas guaranteed PHI's payment obligation. *See id.* at JSUMF ¶ 17.

William Brenner ("Brenner") is an accountant and a partner with the accounting firm Citrin Cooperman & Company, LLP ("Citrin Cooperman"). *See id.* at JSUMF ¶ 22.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Joint Rule 56.1 Statement.

Citrin Cooperman served as the accountants for Growth Products and GPS prior to PHI's acquisition of Growth Products through the Equity Purchase Agreement. *See id.* at JSUMF ¶ 23. Prior to the closing on the Purchase Agreement, Long "had the same idea in regarding to using [Brenner] in the future for consistency on the [earn-out] calculation." *See id.* at SR ¶ 4. Following the closing, Long asked Brenner to close the books for Growth Products and GPS exactly as he had done in the past and to perform the initial 2018 combined company margin analysis to be used for the calculation of the First Earn-out Payment. *See id.* at SR ¶¶ 5-6. Brenner understood that Long was in charge of the operations of Growth Products following the closing. *See id.* at SR ¶ 7.

Prior to sixty (60) days following December 31, 2018, Brenner embarked on calculating the actual gross margin percentage for 2018 to be used for the calculation of the First Earn-out Payment. *See id.* at SR ¶ 6; SR ¶ 9. . Brenner calculated the actual gross margin percentage for 2018 using the formula set forth in the Purchase Agreement. *See id.* at SR ¶ 9. Brenner used total sales for Growth Products and GPS for 2018 "as they were prepared on the books and records for the company." *See id.* at SR ¶ 10. Brenner also calculated the cost of goods sold in a manner consistent with that used by Growth Products and GPS in calculating the December 2017 TTM cost of goods sold as shown in Exhibit G to the Purchase Agreement. *See id.* at SR ¶ 11. Brenner populated the required schedules in the Purchase Agreement with numbers from Growth Products' books and records from 2018 for sales and cost of goods sold to perform the margin analysis, and he provided the First Earn-out Calculation on February 4, 2019 by emailing it to both Long and Nicole. *See id.* at SR ¶ 12. Brenner determined that the First Earn-out Payment due to Sellers was $3,899,017.44. *See id.* at SR ¶ 13. Brenner, who did not merely volunteer his time, billed Growth Products, which was owned by PHI, for his work on the initial 2018

combined company margin analysis to be used for the calculation of the First Earn-out Payment. *See id.* at JSUMF ¶ 3; *id.* at SR ¶ 14. No other First Earn-out Calculation was presented within sixty (60) days of the end of 2018, other than what Brenner presented on February 4, 2019. *See id.* at SR ¶ 15. Brenner did not see anything in his review of the books and records of Growth Products that led him to question the accuracy of what he compiled and sent on February 4, 2019. *See id.* at SR ¶ 16.

Seller Representative did not object to the First Earn-out Calculation Statement and First Earn-out Calculation sent by Brenner on February 4, 2019. *See id.* at SR ¶ 19. The First Earn-out Calculation Statement and First Earn-out Calculation became final and binding on March 22, 2019, a date that was forty-five (45) days after it was presented. *See id.* at SR ¶ 20. At no time within five (5) Business Days after March 22, 2019, has PHI or Douglas paid Seller Representative or Sellers the amount of the First Earn-out Payment, $3,899,018.44. *See id.* at SR ¶¶ 21-22.

Instead, on March 25, 2019, more than forty-five (45) days after Brenner presented his First Earn-out Calculation Statement without any objection made by Seller Representative and eighty-four (84) days after the end of the calculation period for the First Earn-out, Long delivered an entirely new First Earn-out Calculation Statement and a revised calculation of the First Earn-out Payment of $1,226,156.71, a sum which was $2,672,861.73 less than the amount determined to be the required First Earn-out Payment by Brenner. *See id.* at SR ¶ 23. While the stated basis for Long's delay in acting on the First Earn-out calculation statement presented by Brenner was to review the results of a 2018 audit of financials for Growth Products and GPS, and although Long testified that Growth Products and GPS were audited as part of an audit of an affiliated company, Fumigation Holdings, Inc., the Fumigation Holdings, Inc. consolidated

financial statement for the year ending December 31, 2018 makes no reference to Growth Products or GPS. *See id.* at SR ¶ 18. Brenner did not know if there was ever an audit conducted on the 2018 numbers and he was never shown an audited 2018 financial statement. *See id.* at SR ¶ 17. On May 1, 2019, Seller Representative wrote to Long indicating that PHI's presentation of the another First Earn-out Calculation could not circumvent the terms of the Purchase Agreement and the prior calculation presented on February 4, 2019. *See id.* at SR ¶ 24. To date, the First Earn-out Payment remains outstanding. *See id.* at SR ¶¶ 21-22. As a result, both PHI and Douglas have breached the Purchase Agreement by failing to pay the First Earn-out Payment.

In light of the foregoing, Nicole respectfully submits that summary judgment should be granted in her favor on Count One of each Amended Complaint.

Respectfully,

*/s/ Fred D. Weinstein*
Fred D. Weinstein

Encl.

cc: Opposing counsel (via CM/ECF)